**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATE OF AMERICA, *ex rel.*, ) <br> GLORIA UPTON, BARBARA ELLIS- ) <br> STEELE, RENE KENNEDY, and LOURDES ) <br> ACOSTA and STATE OF ILLINOIS, *ex rel.*, ) <br> GLORIA UPTON, BARBARA ELLIS- ) <br> STEELE, RENE KENNEDY, and ) <br> LOURDES ACOSTA, ) <br> ) <br> Plaintiff-Relators, ) <br> ) <br> v. ) <br> ) <br> FAMILY HEALTH NETWORK, INC., ) <br> PHILIP BRADLEY and BARBARA HAY, ) <br> ) <br> Defendants. ) | Case No. 09 C 6022 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants Family Health Network ("Family Health"), Philip Bradley, and Barbara Hay (collectively, "Defendants") seek to dismiss Count I (Violation of Federal False Claims Act, 31 U.S.C. § 3729(a)) and Count II (Violation of Illinois False Claims Act, 740 ILCS 175/3(a)) of Plaintiffs' and Relators' Gloria Upton, Barbara Ellis-Steele, Rene Kennedy, and Lourdes Acosta (collectively, the "Relators") Third Amended Complaint. (R. 61, Mot.) Specifically, Defendants argue that Relators did not correct the deficiencies that the Court previously found with Relators' Second Amended Complaint. (R. 62, Def.'s Mem. at 3-4; *see also* R. 58, Opinion.) For the following reasons, the Court denies Defendants' motion to dismiss.

**BACKGROUND**

Family Health is a Managed Care Organization that contracts with Healthcare and Family Services ("HFS") to provide healthcare to recipients of federal and state assistance under the Medicaid program. (TAC ¶¶ 3-4.) HFS and the federal government pay Family Health a pre-determined amount each month per member enrolled with Family Services. (*Id*. ¶ 3.) Under its contract with HFS, Family Health "is required to accept *each and every* potential enrollee who requests membership, regardless of medical history and current or future medical needs." (*Id*. ¶ 4.) To this end, Family Health enters into contracts with HFS agreeing not to discriminate based on health status. (*Id*. ¶¶ 22, 23, 25, 64. 70.) Relators[1] allege that, in contravention of these contracts, Family health "routinely refuses to enroll Illinois recipients who appear to have high-cost medical needs, and instead enrolls only those individuals who are unlikely to ever need Family Health's services." (*Id*.) According to Relators, "[a]s a direct result of Family Health's unlawful conduct . . . the Governments have lost at least millions of dollars since 1998," when Family Health began contracting with HFS to provide healthcare services. (*Id*. ¶ 3, 5.)

On June 1, 2012, Defendants filed a motion to dismiss Counts I and II of Relators' Second Amended Complaint ("SAC"), which alleged violations of both the Illinois and the Federal False Claims Acts. (R. 45, Orig. Mot.) The Court granted that motion on October 1, 2012, without prejudice. (R. 57, Dis. Ord.) On October 22, 2012, Relators filed a Third Amended Complaint ("TAC"). (R. 59, TAC.) Defendants subsequently filed the current motion to dismiss Counts I and II of the TAC. (*See* Mot.) The Court presumes familiarity with the

---

[1] Under the Federal False Claims Act, "private individuals . . . referred to as 'relators,' may file civil actions known as *qui tam* actions on behalf of the United States to recover money that the government paid as a result of conduct forbidden under [the False Claims] Act." *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011) (citation omitted). Here, the Relators are current and former marketing representatives of HFS.

additional factual and procedural background of this litigation, and incorporates herein by reference the background information set forth in the Court's written opinion dated October 1, 2012. (R. 58, Opinion.)

## LEGAL STANDARD

### I. Rule 12(b)(6)

"A motion under Rule 12(b)(6) tets whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff may plead himself out of court by alleging facts showing that he has no legal claim. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012); *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

**II.     Rule 9(b)**

"The [False Claims Act] is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *U.S. ex rel. Fowler v. Caremark R.X. L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009) (quoting *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)). In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441-42. This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Pirelli*, 631 F.3d at 441-42. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," however. Fed. R. Civ. P. 9(b). "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli,* 631 F.3d at 441 (citation omitted).

## ANALYSIS

As explained in the Court's previous opinion, Relators' pleading standard is the same for their Federal False Claims Act and Illinois False Claims Act causes of action. *See U.S. ex rel. Upton v. Family Health Network, Inc.,* --- F. Supp. 2d ----, No. 09-cv-6022, 2012 WL 4577553 at *5, (N.D. Ill. Oct. 1, 2012) (citing *U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1163 n. 2 (N.D. Ill. 2007) (citing *Humphrey v. FranklinWilliamson Human Servs., Inc.*,

189 F. Supp. 2d 862, 867 (S.D. Ill. 2002)). The Court, therefore, will collectively refer to the Federal and Illinois False Claims Acts as the "FCA."

An FCA claim has three essential elements: (1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false. *See* 31 U.S.C. § 3729(a)(1); *U.S. ex rel. Gross v. AIDS Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Because Relators base their FCA claims on alleged false certifications of compliance with statutory or regulatory requirements, they must allege that the certification of compliance is a condition of or prerequisite to government payment. *See, e.g., U.S. rel. Crews v. NCS Healthcare of Ill, Inc.,* 460 F.3d 853, 858 (7th Cir. 2006); *Gross,* 415 F.3d at 604 (citations omitted). When the Court dismissed Counts I and II of the SAC previously, it found that the Relators had failed to sufficiently allege that Defendants submitted any certifications as conditions of payment. *See Upton*, 2012 WL 4577553 at *11. Defendants now argue that Relators did not correct the deficiencies that the Court identified in its pervious ruling. Specifically, they argue that the TAC fails to properly allege: (1) that the quarterly certifications are conditions of payment; (2) that Family Health fraudulently induced the state into entering into these contracts; and (3) that the quarterly certifications are causally linked to the capitation rates paid by the government. (R. 62, Def.'s Mem. at 3-4.) The Court disagrees.

The Court previously found that, in the SAC, "Relators provide[d] only conclusory allegations that the certifications were 'a condition to receiving payment,' and that Family Health submitted the false certifications 'in order to receive payments from the Governments.'" *Upton*, 2012 WL 4577553 at *11 (citing SAC ¶¶ 61, 63). Additionally, the Court explained that Relators could not rely on "conditions for participation," to meet the "conditions of payment"

5

requirement unless they asserted liability on a fraudulent inducement theory, which they had not done in the SAC. (*Id.* (citing *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir. 2005)). Relators, however, corrected these deficiencies in their TAC.

First, in the TAC, Relators added specific allegations outlining a fraudulent inducement theory. (*See, e.g.,* TAC ¶¶ 76-81.) Relators now assert a theory that "Defendants fraudulently induced the government to pay Defendants by falsely certifying their compliance with the terms of the contracts" even though "Defendants never intended to comply [with those terms] from the outset." (Resp. at 1; *see also* TAC ¶¶ 73-83.) Relators now allege, for example, that Defendants fraudulently induced the government to enter into contracts to pay Family Health by doing one or more of the following:

> (a) on information and belief, falsely representing that Family Health would not discriminate on the basis of health status or need for services, when it intended to do, and the individual defendants intended cause it to do so, in its application to participate in the Medicaid MCO Program;
>
> (b) submitting or causing to be submitted contracts to the State of Illinois and the United States, promising that Family Health would not discriminate on the basis of health status or need for services when it intended to do so, and the individual defendants intended to cause it do so;
>
> (c) submitting or causing to be submitted contracts to the State of Illinois and the United States, promising that Family Health would not discriminate on the basis of health status or need for services when it was currently engaged in such discrimination under its prior contract and had no intention to cease upon execution of the new contract;
>
> (d) submitting false certifications of compliance with current contracts, which had they been truthful concerning Family Health's discriminatory practices, would have precluded the governments from offering or entering into later contracts; [and]
>
> (e) making fraudulent material omissions, specifically, failing to report its practices and intended practices of discrimination in connection with the negotiation, submission and execution of each contract.

(TAC ¶ 76.) Furthermore, Relators now allege that "each and every one of Defendants' requests

for payment was false or fraudulent for one, more, or all of the following reasons:

> (a) Each such request was submitted in connection with a fraudulently induced contract;
>
> (b) each such request was submitted while Family Health was in knowing violation of program eligibility requirements and a condition of payment, specifically, the requirement that Family Health not discriminate on the basis of health status or need for services in enrollment and disenrollment;
>
> (c) each such request was submitted after the defendants had knowingly and falsely certified or caused the certification of the absence of any knowledge fraud or abuse, and a truthful certification was an express condition of payment pursuant to 42 C.F.R. § 438.602; [and]
>
> (d) each such request was submitted while Family Health was in knowing material breach of its contract, but nevertheless maintaining a false and fraudulent pretense of compliance through false certifications and material omissions, and the absence of material breach is a condition of payment as a matter of law."

(TAC ¶ 80.) Moreover, Relators explain that "[h]ad the state and federal governments known the truth, it would have had a material affect on their decision to pay Family Health and the continuance or renewal of its contracts." (TAC ¶ 81.) In other words, Relators' allege that Family Health repeatedly made false statements or submitted false certifications in order to "cause[] the government to keep the funding spigot open." *Gross*, 415 F.3d at 605. In the SAC, Relators did not tie the allegedly false certifications to an obligation under the federal regulations, as they do in the TAC, nor did they allege a cohesive theory of intentional, planned, repeated misrepresentations to first obtain contracts and then to continue to receive funding. Indeed, [t]he only allegations in the [SAC] that even sugget[ed] fraudulent inducement [were] conclusory." *Upton*, 2012 WL 4577553 at *12. The above allegations, however, outline a chain of actions, which Relators knowingly took, with the intention to fraudulently induce future payments from and contracts with the HFS.

Specifically, these allegations that Defendants made promises, in both its contracts with the HFS and its quarterly certifications to the governments, that it had not been discriminating and would continue not to discriminate when enrolling new applicants, while knowing it had

7

been and would continue to cherry-pick health applicants, sufficiently assert a fraudulent inducement theory under the Seventh Circuit's interpretation of the FCA. *See Oakland City*, 426 F.3d at 917 (finding that a Defendant who "knew about the rule and told the [government] that it would comply, while planning to do otherwise, [was] exposed to penalties under the False Claims Act."). Indeed, in the FCA context, the Seventh Circuit has explained that "failure to honor one's promise is (just) breach of contract, but making a promise that one intends not to keep is fraud." *Id*. at 917; *see also U.S. ex rel. Tyson v. Amerigroup Ill., Inc.,* 488 F. Supp. 2d 719, 725 (N.D. Ill. 2007) ("Making a promise that one intends not to keep is fraud and actionable under the FCA; an after-the-fact breach of a contract-that was not planned at the time the contract was entered into-is just that: a breach."). Relators, therefore, have sufficiently pled fraudulent inducement in the TAC by asserting that Family Health intended not to comply with the contractual provisions prohibiting discrimination when it agreed to put them in their contracts and knew it was and would continue to discriminate when it submitted certification to the contrary, rather than merely a breach of contract after-the-fact, as in their SAC. *See Upton*, 2012 WL 4577553 at *12; *see also Amerigroup*, 488 F. Supp. 2d at 725-26 (finding that the plaintiff sufficiently met the requirements of *Oakland City* in part because it alleged that the defendants knew about the nondiscrimination provisions and statutes and told the agency that it would comply but planned to violate, and was already violating, those provisions); *see Oakland City,* 426 F.3d at 917 ("To prevail in this suit [the plaintiff] must establish that the [defendant] not only knew, when it signed the phase-one application, that contingent fees to recruiters are forbidden, but also planned to continue paying those fees while keeping the [government] in the dark.").

Indeed, Relators include specific provisions from Family Health's 2006 and 2009 contracts with HFS which outline the relevant conditions of participation that Family Health allegedly breached, and intended to breach from the beginning, namely that Defendants will not discriminate on the basis of health status and will submit quarterly reports certifying there has been no fraud.[2] (*See, e.g.,* TAC ¶¶ 63, 64, 66, 70, Ex. D, Ex. E.) Paragraph 5.3 of Family Health's 2006 contract,[3] for example, states, in part:

> (a) The Contractor shall not engage in Marketing practices that mislead, confuse or defraud either Potential Enrollees or the Department.
> * * * *
> (e) Potential Enrollees may not be discriminated against on the basis of health status or need for health care services or on any illegal basis.
> * * * *
> (l) The Contractor shall immediately notify the Department and the Office of Inspector General, in writing, of any inappropriate Marketing activities

(TAC ¶ 64.) Additionally, Paragraph 3.2 of the 2006 contract includes the following statement: "The Contractor shall not discriminate against Potential Enrollees on the basis of such individuals' health status or need for health services." (TAC ¶ 66.) Paragraph 4.4 of the 2006 contract, entitled "Termination of Coverage," states in relevant part:

> (c)The Contractor shall not seek to terminate enrollment because of an adverse change in the Enrollee's health status or because of the Enrollee's (i) utilization of Covered Services, (ii) diminished mental capacity, (iii) uncooperative/disruptive behavior resulting from such Enrollee's special needs (except to the extent such Enrollee's continued enrollment in the

---

[2] Although the Court generally evaluates a motion to dismiss based on only the allegations contained in the complaint, the Court here may consider the contracts attached to the TAC. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment.") (internal citations omitted).

[3] The 2009 contract is "substantially similar" to the 2006 contract with the same relevant provisions. (TAC ¶ 63, n. 1.)

9

>Plan seriously impairs the Contractor's ability to furnish Covered Services to the Enrollee or other Enrollees) or (iv) action in connection with exercising his/her Appeal or Grievance rights. Such attempts to seek to terminate enrollment will be considered in violation of the terms of this Contract.

(TAC ¶ 67.) Additionally, Paragraph 5.25 of the 2006 contract, entitled "Fraud and Abuse Procedures," states in relevant part:

>(a) The Contractor shall have an affirmative duty to timely report suspected Fraud, Abuse or criminal acts in the HFS Medical Program by Participants, Providers, the Contractor's employees, or Department employees to Healthcare and Family Services Office of Inspector General. To this end, the Contractor shall establish the following procedures, in writing:
>
>>1) the Contractor shall form a compliance committee and appoint a single individual to serve as liaison to the Department regarding the reporting of suspected Fraud or Abuse;
>>
>>2) the Contractor's procedure shall ensure that any of Contractor's personnel or subcontractors who identify suspected Fraud or Abuse shall make a report to Contractor's liaison;
>>
>>3) the Contractor's procedure shall ensure that the Contractor's liaison shall provide notice of any suspected Fraud or Abuse to the OIG immediately upon receiving such report;
>>
>>4) the Contractor shall submit a quarterly report certifying that the report includes all instances of suspected Fraud or Abuse or shall certify that there was no suspected Fraud or Abuse during that quarter.Reports shall be considered timely if they are made as soon as the Contractor knew or should have known of the suspected Fraud or Abuse and the certification is received within thirty (30) days after the end of the quarter; and
>>
>>5) the Contract shall ensure that all its personnel and subcontractors receive notice of these procedures.

(TAC ¶ 70.)

Notably, Defendant Bradley signed the contracts at issue, indicating that he had knowledge of their contents and consented to comply with their contents. (*Id*. Ex. D at 98; Ex. E at 127; *see also* Resp. at 5.) Defendants argue that Relators have not pled knowledge or intent with sufficiently particularity to meet the heightened pleading standards of Rule 9(b). Rule 9(b),

however, provides that knowledge and intent may be alleged generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally")). Viewing the facts in the light most favorable to Relators and making all inferences in their favor, the Court finds these allegations sufficiently plead knowledge and intent for purposes of this motion. (Resp. at 10-11; Reply at 3; *see also Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009) (citing Fed. R. Civ. P. 9(b)).

Relators also allege that Family Health submitted certifications on a quarterly basis in which it needed to disclose any fraud or breach of contract, such as cherry-picking enrollees. (*See, e.g.,* TAC ¶¶ 25, 27, 59, 70, 71, 72.) Specifically, Paragraph 5.25 of the 2006 contract included a requirement that Family Health "shall submit a quarterly report certifying that the report includes all instances of suspected Fraud or Abuse or shall certify th at there was no suspected Fraud or Abuse during that quarter." (TAC ¶ 70(a)(4).) Furthermore, 42 C.F.R. § 438.604(b), requires certification, pursuant to Section 438.606, for all documents specified by Illinois, which would, therefore, include certification for a quarterly report that Family Health was not cherry-picking. Additionally, under 42 C.F.R. § 438.602, "[a]s a condition for receiving payment under the Medicaid managed care program, [Family Health] must comply with the applicable certification, program integrity and prohibited affiliation requirements of this subpart." (TAC ¶ 25.) Unlike in the SAC, which did not include allegations relating to these regulations, Relators now sufficiently allege that Defendants submitted false certifications, indicating that they were not cherry-picking and were not committing fraud, in order to continue receiving payment and to have the opportunity to obtain future contracts and payment.

11

Second, the Court previously held that, even applying the "conditions of participation" framework, Relators failed, in the SAC, to allege "facts to support an inference that the certifications are causally linked to the government's capitation payments." *Upton*, 2012 WL 4577553 at *12. Specifically, the Court noted that, in the SAC, the Relators "[did] not cite to any contractual language or other reason to suggest that the government would not have paid Family Health the capitation rates if Family Health had provided truthful quarterly certifications or had not provided quarterly certifications at all." (*Id.*) In the TAC, however, Relators cite to specific statutory provisions which allow the government to terminate its contract with Health Family based upon a breach of contract and required Health Family to sign a contract expressly forbidding discrimination. (TAC ¶¶ 22, 23, 25, 28, 80, 81.) Specifically, in the TAC, unlike the SAC, Relators cite to 42 U.S.C. § 1396(b)(m) and 42 C.F.R. § 438.708. (*Id.*).

Under 42 U.S.C. § 1396b(m)(2)(A)(v), the United States will refuse to pay for the costs of Family Health's services unless Family Health's contract with Illinois states that Family Health "will not discriminate among [applicants] on the basis of their health status or requirements for health care services." (TAC ¶ 22; *see also Amerigroup*, 488 F. Supp. 2d. at 725 ("[T]he non-discrimination provisions [of the Social Security Act] were prerequisites to participatin in the Medicaid HMO program under federal law.") (citing 42 U.S.C. § 1396b(m)(2)(A)(v))). As discussed above, Family Health signed contracts in 2006 and 2009 that included such provisions, along with a requirement to certify, at least quarterly, that it was not discriminating. These allegations show that the United States would not have approved Family Health's 2006 or 2009 contracts without promises that it would not discriminate. *See Amerigroup*, 488 F. Supp. 2d. at 726. Moreover, these allegations, when viewed in the light

most favorable to Realtors, indicate that the United States would also not have approved a contract with Family Health if Family Health was not abiding by these provisions its specifically required in the contracts. As in *Oakland City*, therefore, Family Health's repeated false promises to not discriminate were "integral to a casual chain leading to payment," even though indirect, as Family Health had to make this promise in order to initially obtain the 2006 contract, and then to obtain a new contract in 2009. 426 F.3d at 916.

Additionally, under 42 C.F.R. § 438.708, the "State has the authority to terminate [Family Health's] contract . . . if the State determines that [Family Health] had failed" to "[c]arry out the substantive terms of its contract." Making all reasonable inferences in the Relators' favor, Family Health's promises not to discriminate, and quarterly certifications that it was not discriminating, were therefore material to the government not terminating Family Health's contract, as well as to its willingness to sign new contracts with Family Health. Indeed, Defendants explain that the "the core of the inducement theory is that the pretense of compliance – past, present and future – with respect to earlier contracts serves to indue later contracts, by falsely representing intent to comply." (Resp. at 7.) Additionally, as in *Amerigroup*, "the nondiscrimination provisions were material because they formed the actuarial basis upon which capitation rates were calculated." *Id*. (*see also* TAC ¶¶ 20-21, 75.) At this stage, such allegations are sufficient to plead a claim under the False Claims Act. *See U.S. ex rel. Yannacopoulos v. General Dynamics,* 652 F.3d 818, 824 (7th Cir. 2011) ("If the breaching party falsely claims to be in compliance with the contract to obtain payment, however, there may an actionable false claim."); *Amerigroup*, 488 F. Supp. 2d at 726-27 (finding sufficient evidence for a reasonable jury to have concluded that the misrepresentations were material when they related

to conditions of participation); *Oakland City*, 426 F.3d at 917 ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork.").

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

**DATED: March 4, 2013**

                                        ENTERED

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**